UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIERAN SEARCY,

    Petitioner,

v.                                        Case No. 8:25-cv-632-WFJ-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

    Kieran Searcy, a Florida prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1; *see also* Doc. 2). Respondent filed a response opposing the petition. (Doc. 9). Mr. Searcy filed a reply. (Doc. 16). After careful review, the petition is **DENIED**.

**I.    Background**

    On the afternoon of April 8, 2020, Mr. Searcy fired several shots at Stephanie Wallen during a drive-by shooting in Pinellas County, Florida. (Doc. 10-2, Ex. 2, at 1). The two had known each other since 1998, and until March 2020 they were "good friends." (*Id.*, Ex. 4, at 24-25). Their relationship deteriorated because of a feud between Mr. Searcy and Ms. Wallen's boyfriend. (*Id.* at 25). A few days before the shooting, Mr. Searcy texted Ms. Wallen to "get some Xanax." (*Id.* at 12). Ms. Wallen declined to provide the drugs, leading to an argument via text message between her boyfriend and Mr. Searcy. (*Id.* at 12-14). Ms. Wallen ultimately blocked Mr. Searcy's phone number. (*Id.* at 12).

1

Approximately thirty minutes before the shooting, Ms. Wallen received a phone call from her son T.J. (*Id.* at 8, 10). He asked her to pick him up at Mr. Searcy's house. (*Id.* at 10). According to Ms. Wallen, T.J. sounded "scared," and his voice was "muffled." (*Id.*) Mr. Searcy "snatched the phone" from T.J. and said, "[B]*tch, I've been waiting since Sunday. Where are you at? Come get your [child]." (*Id.* at 11). In the background of the call, Ms. Wallen's boyfriend threatened to "f*ck [Mr. Searcy] up." (*Id.* at 15). Ms. Wallen told T.J. to meet her at her sister's apartment in twenty minutes. (*Id.*)

Ms. Wallen drove to the apartment complex, parked in the visitor's lot, and got out of her car. (*Id.* at 19-20). She saw Mr. Searcy driving toward her in a "gold Buick." (*Id.* at 21). He stopped the car approximately "four feet" from Ms. Wallen, fired several shots in her direction, and drove off. (*Id.* at 22-24). Ms. Wallen escaped unharmed. (*Id.* at 28). Less than an hour later, law enforcement apprehended Mr. Searcy. (*Id.* at 28-29). Ms. Wallen and another witness arrived at the scene of the arrest and identified Mr. Searcy as the shooter. (*Id.* at 29-30; *see also id.*, Ex. 2, at 1).

Mr. Searcy was charged with attempted first-degree murder, criminal mischief, and possession of a firearm by a felon. (*Id.*, Ex. 3). In separate, unrelated cases, Mr. Searcy was charged with two counts of possession of cocaine. (*Id.*, Ex. 6, at 4). Because of his lengthy criminal history, Mr. Searcy qualified as both a habitual felony offender ("HFO") and a prison releasee reoffender ("PRR"). (*Id.* at 3, 9; *see also id.*, Ex. 7). His PRR status meant that he faced a mandatory life sentence if convicted of attempted first-degree murder. *See St. James v. State*, 88 So. 3d 999, 1001 (Fla. 4th DCA 2012) (PRR statute "mandate[s] life

2

for a defendant convicted of a felony punishable by life, such as attempted first-degree murder").

Mr. Searcy pled guilty pursuant to a written plea agreement to aggravated assault with a firearm, possession of a firearm by a felon, and possession of cocaine.[1] (Doc. 10-2, Ex. 5). He received an agreed-upon sentence of 10 years' imprisonment for aggravated assault, to run concurrently with a 10-year sentence for possession of a firearm by a felon and a five-year sentence for possession of cocaine. (*Id.*, Ex. 6, at 13-14). As part of the sentence, the trial court determined that Mr. Searcy qualified as an HFO. (*Id.* at 13). Mr. Searcy did not appeal his convictions. Instead, he moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 9). That motion was denied without an evidentiary hearing, and the appellate court affirmed in an unexplained decision. (*Id.*, Exs. 10, 12, 16). This federal habeas petition followed. (Doc. 1; *see also* Doc. 2).

## II.   Standards of Review

### A.   AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

---

[1] The criminal-mischief charge was *nolle prossed*. (Doc. 10-2, Ex. 6, at 5).

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The appellate court in Mr. Searcy's case affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the

4

summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

      **B.**      **Ineffective Assistance of Counsel**

Mr. Searcy alleges ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Searcy must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Mr. Searcy must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## III. Discussion[2]

### A. Ground One—Stipulation to Factual Basis for Plea

Mr. Searcy argues that trial counsel was ineffective for stipulating to a factual basis for the plea. (Doc. 1 at 4). During the change-of-plea hearing, the court asked the parties whether a "factual basis" for the plea needed to be placed on the record. (Doc. 10-2, Ex. 6,

---

[2] Mr. Searcy argues that Respondent "defaulted" in this action by filing a late response to the petition. (Doc. 15 at 1). But "a default judgment is not contemplated in habeas corpus cases." *Aziz v. Lefevre*, 830 F.2d 184, 187 (11th Cir. 1987). Thus, Respondent's "tardiness in responding to [the] habeas petition does not entitle [Mr. Searcy] to habeas relief in the form of a default judgment." *Surles v. Toney*, No. 5:21-cv-1236-RDP-JHE, 2022 WL 507435, at *1 (N.D. Ala. Feb. 18, 2022). Additionally, to the extent Mr. Searcy attempts to raise new claims in his reply, those claims cannot be considered because they were not included in the petition. *See* Rule 2(c), Rules Governing Section 2254 Cases ("The petition must: (1) specify all the grounds for relief available to the petitioner . . . ."); *United States v. Evans*, 473 F.3d 1115, 1120 (11th Cir. 2006) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.").

at 10). Counsel replied, "Your Honor, I would stipulate that the facts exist that could prove the crimes . . . as being pled to." (*Id.* at 11). According to Mr. Searcy, counsel should not have entered the stipulation because "no valid factual basis existed" to support a conviction for aggravated assault with a firearm. (Doc. 1 at 5).

The postconviction court held that the "record refute[d]" Mr. Searcy's claim because "there was evidence to support" the plea. (Doc. 10-2, Ex. 10, at 3). First, the "complaint/arrest affidavit [was] on file" at the time of the plea. (*Id.*) That document stated that on April 8, 2020, Mr. Searcy "drove by the victim and fired at" her, creating "a well-found[ed] fear of death or great bodily harm." (*Id.*, Ex. 2, at 1). Second, "counsel had deposed the victim, and her testimony support[ed] the allegations contained in the complaint affidavit." (*Id.*, Ex. 10, at 3). Specifically, "[t]he victim testified that [Mr. Searcy], whom she had known for many years, shot at her four times." (*Id.*) Thus, if "counsel had objected and insisted on a factual basis, the State would have recited the facts set forth in the information and established by the victim's testimony." (*Id.*) Based on this finding, the court ruled that Mr. Searcy "fail[ed] to show that counsel was deficient." (*Id.*)

The rejection of this claim was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a federal court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Such deference is required here. The postconviction court held that, as a matter of Florida law, a sufficient "factual basis" existed for the plea. (Doc. 10-2, Ex. 10, at 3). Thus, the postconviction court "already has told us how the issue[] would have been resolved under

7

Florida state law had [counsel] done what [Mr. Searcy] argues he should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). That determination is binding on federal habeas review. *See Gulbronson v. Dixon*, No. 1:22-cv-157-AW-ZCB, 2025 WL 2501528, at *4 (N.D. Fla. July 11, 2025) (rejecting ineffective-assistance claim because "the Florida state courts . . . already decided that, as a matter of state law, the information in the record was sufficient to establish a factual basis for the conspiracy charge"), *adopted by* 2025 WL 2522692 (N.D. Fla. Sept. 2, 2025); *Chamniss v. Tucker*, No. 3:11-cv-566-RV-EMT, 2012 WL 6840497, at *12 (N.D. Fla. Dec. 11, 2012) (declining to "second-guess" state-court finding that "the facts included in the probable cause affidavit provided a factual basis for Petitioner's plea to lewd and lascivious conduct"), *adopted by* 2013 WL 140393 (N.D. Fla. Jan. 11, 2013).

Because the postconviction court "authoritatively decided as a matter of [Florida] law" that a sufficient factual basis supported the plea, the remainder of the analysis is straightforward. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024). "[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994). Thus, the postconviction court reasonably concluded that counsel was not deficient for stipulating to a factual basis for the plea.

## B. Ground Two, Sub-Claim A—Failure to Seek Suppression of Show-up Identification

As noted above, approximately one hour after the shooting, the victim identified Mr. Searcy as the perpetrator during a show-up procedure. (Doc. 10-2, Ex. 4, at 28-30).

8

According to Mr. Searcy, he was "alone [and] cuffed on a curb," and officers had allegedly told the victim that he "match[ed] her description." (Doc. 1 at 6). Mr. Searcy contends that counsel should have moved to suppress the identification as "inherently suggestive." (*Id.*)

The postconviction court rejected this claim, finding that "counsel lacked a good-faith basis to file a motion to suppress the victim's out-of-court identification." (Doc. 10-2, Ex. 10, at 4). The court explained that, given "the totality of the circumstances, there was no substantial likelihood of irreparable misidentification." (*Id.* at 5). As the court noted, the victim "testified in her deposition that she had known [Mr. Searcy], a really good friend, since the 1990s." (*Id.* at 4). Moreover, according to the victim, "Mr. Searcy had been texting her before she arrived at her destination on the day of the shooting, and was waiting for her; he drove by her at close range, and shot four times in her direction before driving away in his gold Buick." (*Id.*) Thus, the court concluded that counsel was not "deficient for failing to file a meritless" suppression motion. (*Id.*)

This ruling was reasonable. "In cases like this one, where a petitioner faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice prongs of *Strickland* turn on the viability of the motion to suppress." *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015). "This is because a lawyer's performance only falls outside the range of competence demanded of counsel if she did not pursue a motion to suppress that would have affected the outcome of the case had the defendant rejected the plea and proceeded to trial." *Id.* Here, a fairminded jurist could agree that counsel was not deficient because "any motion to

9

suppress would have been meritless." *United States v. Gordon*, 722 F. App'x 931, 932 (11th Cir. 2018).

The constitution imposes "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). "Out-of-court identifications are examined for due process violations using a two-part test: The court must first decide whether the [procedure] was impermissibly suggestive, and if it was suggestive the court must then determine whether the identification procedure created a substantial likelihood of misidentification." *United States v. Smith*, 459 F.3d 1276, 1294 (11th Cir. 2006). Thus, even if an identification procedure was unduly suggestive, exclusion is not required if, "under the totality of the circumstances, the identification was nonetheless reliable." *United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001).

The Court assumes, without deciding, that the identification procedure in this case was unduly suggestive. A competent attorney could nonetheless conclude that the procedure did not "create[] a substantial likelihood of misidentification." *Smith*, 459 F.3d at 1294. "Ordinarily, courts consider the reliability of an eyewitness identification in the context of a witness observing and subsequently identifying a *stranger*." *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1221 (10th Cir. 2024). But when "a witness has some familiarity with a suspect, . . . courts have recognized that the existing acquaintanceship supports a finding of reliability—apart from the [other factors used to evaluate the likelihood of misidentification]." *Id.* (collecting cases); *see also United States v. Burgos*,

55 F.3d 933, 942 (4th Cir. 1995) ("Here, because the witnesses knew [the defendant] personally, the chance of misidentification from a concededly suggestive photo display is virtually non-existent.").

At the time of the identification, the victim had known Mr. Searcy for over 20 years. (Doc. 10-2, Ex. 4, at 24-25). Indeed, they were "good friends" until their relationship began to deteriorate in March 2020, one month before the shooting. (*Id.*) As the postconviction court explained, "Mr. Searcy had been texting [the victim] before she arrived at her destination on the day of the shooting." (*Id.*, Ex. 10, at 4). He eventually "drove by her at close range, and shot four times in her direction before driving away in his gold Buick." (*Id.*) Thus, this case does not involve "the 'stranger who jumps out of the dimly lit alley' situation that would raise reasonable doubts about [the victim's] perception." *Moss v. Hofbauer*, 286 F.3d 851, 862 (6th Cir. 2002). Instead, the victim "was familiar with [Mr. Searcy], and that familiarity alone [was] sufficient under these facts to overcome any suggestiveness associated with the identification procedure." *Johnson*, 99 F.4th at 1222. Therefore, the postconviction court reasonably concluded that counsel was not "deficient for failing to file a meritless" suppression motion. (Doc. 10-2, Ex. 10, at 4).

### C. Ground Two, Sub-Claim B—Failure to Seek Suppression of Photograph of Gun

Mr. Searcy faults trial counsel for not moving to suppress an "illegally obtained" photograph of a gun "in his waistband." (Doc. 1 at 6). Law enforcement allegedly found the photograph by "enter[ing] the photo gallery" of Mr. Searcy's cellphone. (*Id.*) According to Mr. Searcy, this exceeded the scope of the search warrant, which covered only "text

messages between the parties." (*Id.*) Mr. Searcy argues that "the charges could not [have] remain[ed]" if the photograph had been excluded because there was "no[] other valid proof" that he possessed a firearm. (*Id.* at 6-7).

The postconviction court rejected this claim for lack of prejudice, explaining that "the photograph from [Mr. Searcy's] phone was not the only basis" for finding that he possessed a firearm. (Doc. 10-2, Ex. 10, at 5). As the court pointed out, the "victim saw [Mr. Searcy] shoot at her and her testimony is evidence that [he] possessed a firearm." (*Id.*) The court thus concluded that "even if counsel [had] successfully moved to suppress the photograph from [Mr. Searcy's] phone, he still could have been convicted . . . based on the victim's testimony." (*Id.*)

This ruling was reasonable.[3] To show prejudice in the context of a guilty plea, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Courts should not upset a plea solely because of *post hoc* assertions from [the petitioner] about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, the petitioner must "convince the court that a decision to reject [a] plea [] would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1265 (11th Cir. 2015). "The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial

---

[3] Respondent argues that Ground Two, Sub-Claim B is procedurally defaulted, but the Court need not reach that issue because the claim fails on the merits. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

is to determine whether petitioner had available a defense that would likely have borne fruit at trial." *Singleton v. Sec'y Dep't of Corr.*, No. 8:07-cv-1419-VMC-MAP, 2009 WL 975783, at *4 (M.D. Fla. Apr. 9, 2009).

Mr. Searcy fails to establish a "reasonable probability" that, had the photograph been excluded, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. First, there is no basis to conclude that exclusion of the photograph "would likely have borne fruit at trial." *Singleton*, 2009 WL 975783, at *4. As the postconviction court explained, the photograph was not the only evidence that Mr. Searcy possessed a firearm. (Doc. 10-2, Ex. 10, at 5). The victim herself testified that Mr. Searcy shot at her, and "her testimony is evidence that [he] possessed a firearm." (*Id.*) Moreover, the arrest affidavit notes that another witness "positively identified" Mr. Searcy as the shooter. (*Id.*, Ex. 2, at 1). "Eyewitness testimony that the defendant possessed a firearm is sufficient evidence to support a finding that the defendant was in possession of a firearm." *Akins v. State*, 838 So. 2d 637, 639 (Fla. 5th DCA 2003); *see also Bussell v. State*, 66 So. 3d 1059, 1061 (Fla. 1st DCA 2011) ("The testimony of a single witness, even if uncorroborated and contradicted by other State witnesses, is sufficient to sustain a conviction.").

Second, Mr. Searcy offers no viable defense to the charges, and "by pleading guilty he received a sentence of 10 years' imprisonment rather than the mandatory life sentence he faced if he went to trial." *Stevens v. Sec'y, Dep't of Corr.*, No. 8:21-cv-1440-TPB-CPT, 2024 WL 1118824, at *6 (M.D. Fla. Mar. 14, 2024). Under these circumstances, no

"rational person would have rejected [Mr. Searcy's] plea bargain."[4] *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (finding no *Strickland* prejudice where "plea bargain lowered [defendant's] sentence of imprisonment by eight years"); *see also Sierra v. Fla. Dep't of Corr.*, 657 F. App'x 849, 852 (11th Cir. 2016) (holding that, because petitioner had "no valid defenses, it would not have been rational . . . to have rejected the plea agreement and proceeded to trial").

### D. Ground Three, Sub-Claim A—Failure to Challenge Sufficiency of Arrest Affidavit

Mr. Searcy argues that trial counsel should have moved to dismiss the information because the arrest affidavit was "fundamentally flawed." (Doc. 1 at 8). According to Mr. Searcy, the affidavit failed to satisfy the "legal standard set forth in" Florida Rule of Criminal Procedure 3.140(g). (*Id.*) Under that provision, "[a]n information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his or her good faith in instituting the prosecution and certifying that he or she has received testimony under oath from the material witness or witnesses for the offense." Fla. R. Crim. P. 3.140(g). Mr. Searcy alleges that the prosecution failed to obtain testimony from a "witness or victim of the crime," rendering the affidavit insufficient under Florida law. (Doc. 1 at 8).

---

[4] Mr. Searcy appears to raise a related claim, arguing that counsel should have told him he was not subject to Florida's 10-20-Life statute because the prosecution "could not have proven" that he possessed a firearm. (Doc. 1 at 10; Doc. 10-2, Ex. 9, at 15). As explained above, however, the prosecution could have relied on eyewitness testimony to prove possession, and Mr. Searcy received a significant reduction in sentencing exposure by pleading guilty. Under these circumstances, there is no basis to conclude that "a decision to reject the plea bargain would have been rational." *Diveroli*, 803 F.3d at 1265. Therefore, a reasonable jurist could agree with the postconviction court that Mr. Searcy suffered no prejudice from counsel's allegedly deficient advice on the 10-20-Life statute. (Doc. 10-2, Ex. 10, at 9-10).

14

The postconviction court held that "counsel lacked a good-faith basis to file" Mr. Searcy's proposed motion to dismiss. (Doc. 10-2, Ex. 10, at 6). Citing Rule 3.140(g), the court explained that Florida law "does not require law enforcement to file any supplementary affidavits in order for the information to be properly supported." (*Id.* at 7). According to the court, the "record demonstrate[d] that the victim's sworn statements were taken on the day of the offense and that she signed [her sworn] statement the following day after reviewing it for accuracy." (*Id.*) Those statements "were made under oath." (*Id.*) Thus, the court found that "counsel was not deficient for failing to file a meritless motion to dismiss based on an allegedly defective arrest affidavit." (*Id.*)

This ruling was reasonable. Mr. Searcy's ineffective-assistance claim "turns on [an issue of] state law"—whether the arrest affidavit satisfied Rule 3.140(g). *Pinkney*, 876 F.3d at 1295. The postconviction court held that it did. (Doc. 10-2, Ex. 10, at 6-7). This application of Florida law is binding on federal habeas review. *See Watson v. Buss*, No. 4:08-cv-428-SPM-EMT, 2011 WL 4102776, at *12 (N.D. Fla. Mar. 15, 2011) (holding, in the context of an ineffective-assistance claim, that a federal court "must defer to the state court's determination that the charging document did not contravene Rule 3.140(g)"), *adopted by* 2011 WL 4090681 (N.D. Fla. Sept. 14, 2011). Therefore, the postconviction court reasonably concluded that counsel did not provide ineffective assistance by failing to file a meritless motion.[5] *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

---

[5] In any event, "[e]ven assuming the . . . information had been dismissed upon some motion, the State would have simply cured the deficiency by filing a new information." *Silvers v. Sec'y, Fla. Dep't of Corr.*, No.

15

### E.     Ground Three, Sub-Claim B—Failure to Raise Double-Jeopardy Challenge

According to Mr. Searcy, trial counsel should have argued that double jeopardy barred his convictions for aggravated assault with a firearm and possession of a firearm by a felon. (Doc. 1 at 9; Doc. 10-2, Ex. 9, at 10-11). The postconviction court found that counsel was not deficient for failing to raise this "meritless" argument. (Doc. 10-2, Ex. 10, at 6). It explained that the convictions did not violate double jeopardy because "each . . . charge[] require[d] proof of different elements." (*Id.*) As the court noted, "[t]he offense of possession of firearm by a convicted a felon requires the additional proof that the person in possession of the firearm previously had been convicted of a felony." (*Id.*) As a result, "the charges constituted more than one separate offense for double-jeopardy purposes." (*Id.*)

The postconviction court correctly held that counsel had no basis to raise a double-jeopardy challenge. "Florida courts apply the 'same elements' test from *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether multiple convictions violate double jeopardy." *Simpson v. U.S. Att'y Gen.*, 7 F.4th 1046, 1056 (11th Cir. 2021). Under *Blockburger*, two offenses are different for double-jeopardy purposes "if each requires proof of an additional fact which the other does not." *United States v. Smith*, 532 F.3d 1125, 1128 (11th Cir. 2008). "[I]f an offense requires proof of an element that the other offense does not, [a court] need look no further in determining that the prosecution of both offenses

---

3:17-cv-1091-BJD-PDB, 2019 WL 4120109, at *5 (M.D. Fla. Aug. 29, 2019); *see also* Fla. R. Crim. P. 3.140(j) ("An information on which the defendant is to be tried that charges an offense may be amended on the motion of the prosecuting attorney or defendant at any time prior to trial because of formal defects.").

16

does not offend [double jeopardy]." *United States v. Davis*, 854 F.3d 1276, 1286 (11th Cir. 2017). "The *Blockburger* test is applied by analysis of the elements of the offense charged, not by focusing on the evidence" in the record. *United States v. Boldin*, 772 F.2d 719, 726 (11th Cir. 1985).

Mr. Searcy's convictions satisfy *Blockburger* because each offense requires proof of facts that the other does not. Aggravated assault with a firearm requires, among other things, "a threat to do violence, with the apparent ability to do so, causing a well-founded fear." *State v. Hines*, 695 So. 2d 747, 748 (Fla. 1st DCA 1997). Possession of a firearm by a felon contains no such elements. Fla. Stat. § 790.23(1)(a). To the contrary, it requires proof of "prior conviction of a felony"—an element not contained in aggravated assault with a firearm. *Hines v. State*, 983 So. 2d 721, 724 (Fla. 1st DCA 2008). Accordingly, counsel had no basis to raise a double-jeopardy challenge because "each offense required proof of an element that the other did not."[6] *Lewis v. Fla. Att'y Gen.*, No. 17-15460-E, 2018 WL 1334622, at *1 (11th Cir. Feb. 22, 2018) (no double-jeopardy violation where petitioner was convicted of "aggravated assault with a firearm, possession of a firearm by a felon, and possession of a firearm in commission of a felony").

### F. Ground Four—Failure to Advise of "Possible Defenses" to Sentencing Enhancement

Mr. Searcy faults trial counsel for failing to inform him that the prosecution "offered prior convictions that did not qualify" him as an HFO. (Doc. 1 at 10; Doc. 10-2, Ex. 9, at

---

[6] Mr. Searcy notes that his charges were "enhance[d] by the 10-20-Life statute," but he fails to show that this rendered his convictions subject to challenge on double-jeopardy grounds. (Doc. 1 at 9).

14). The "HFO provision allows courts to sentence a defendant who qualifies as an HFO to an extended term of imprisonment." *Foulks v. State*, 306 So. 3d 1178, 1185-86 (Fla. 3d DCA 2020). Thus, the HFO statute "increase[s] the maximum sentence that can be imposed" for certain offenses, *id.*, but "it does not require a mandatory minimum sentence," *Peek v. State*, 143 So. 3d 1101, 1102 (Fla. 5th DCA 2014). As relevant here, an HFO sentence requires proof that "the defendant has been previously convicted of any combination of two or more felonies and that the current felony occurred . . . within five years from the date of the defendant's release from prison . . . for a prior felony offense." *Moore v. State*, 944 So. 2d 1063, 1064 (Fla. 4th DCA 2006).

The postconviction court rejected Mr. Searcy's ineffective-assistance claim, finding that he "qualified for sentencing as an HFO." (Doc. 10-2, Ex. 10, at 9). The court noted that "the State submitted an 82-page sentencing packet . . . that contained certified copies of [Mr. Searcy's] prior convictions as well as a certified crime and time report establishing the date of [his] last release from the Florida Department of Corrections." (*Id.* at 8). The sentencing packet showed that Mr. Searcy "had five prior convictions for sale/manufacture/delivery of cocaine as well as a prior conviction for trafficking in cocaine." (*Id.*) Moreover, he was "last released from [prison] on September 10, 2018," and the charged offenses "occurred on April 8, 2020." (*Id.*) This meant that "the offenses occurred within five years of [Mr. Searcy's] last release from prison." (*Id.*) Thus, the court rejected Mr. Searcy's ineffective-assistance claim because it rested "on his mistaken belief that he did not qualify for HFO sentencing." (*Id.* at 9).

This ruling was reasonable. Mr. Searcy's ineffective-assistance claim "turns on [an issue of] state law"—whether he qualified for HFO sentencing. *Pinkney*, 876 F.3d at 1295; *see also Lovett v. Sec'y, Fla. Dep't of Corr.*, No. 8:07-cv-1410-JSM-TBM, 2009 WL 2382252, at *7 (M.D. Fla. July 31, 2009) ("[Petitioner's] categorization as a habitual felony offender is a matter purely of state law."). The postconviction court "authoritatively decided as a matter of [Florida] law" that Mr. Searcy was subject to HFO sentencing. *Calhoun*, 92 F.4th at 1351. A federal habeas court cannot second-guess that conclusion. *Cf. Smith v. McNeil*, No. 3:07-cv-134-LAC-EMT, 2009 WL 3584424, at *9 (N.D. Fla. Oct. 27, 2009) ("[T]his court must defer to . . . the state court's determination that Petitioner had no meritorious basis to appeal the sufficiency of the State's HFO notice."), *adopted by* 2009 WL 4405047 (N.D. Fla. Dec. 2, 2009). Thus, the postconviction court reasonably concluded that counsel was not obligated to raise a meritless challenge to the HFO designation.[7] *See Freeman*, 536 F.3d at 1233 ("A lawyer cannot be deficient for failing to raise a meritless claim.").

## IV. Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Searcy's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Searcy and to **CLOSE** this case.

---

[7] To the extent Mr. Searcy argues counsel failed to properly advise him on the 10-20-Life statute, the Court addressed that claim above in connection with Ground Two, Sub-Claim B.

3. Mr. Searcy is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Searcy must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Searcy has not made the requisite showing. Because Mr. Searcy is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on November 5, 2025.

*[signature]*
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE